UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
KEVIN DRAKE and LORI DRAKE,       :
individually and as next friend   :
of J.D.                           :
        Plaintiffs,               :
                                  :    Case No. 2:13-cv-234
     v.                           :
                                  :
ALLERGAN, INC.                    :
                                  :
        Defendant.                :
```

## Opinion and Order

Defendant Allergan, Inc. ("Allergan") moves to compel the production of documents showing 1) how much money Plaintiffs' expert Dr. David Kessler has received from serving as an expert witness since 2011 and 2) the percentage of his total income over that time that expert witness fees represent. For the reasons detailed below, Allergan's Motion to Compel is **denied**.

Rule 26 states that an expert's report must contain "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi). Under the plain meaning of the Rule, this required disclosure is limited to the present case. Communications between a party's attorney and an expert witness are generally protected from disclosure, but there is an exception to the general rule for communications that "relate to compensation for the expert's study or testimony." Fed. R. Civ. P. 26(b)(4)(C)(i). While

this section does not include the phrase "in the case" as section 26(a)(2)(b)(vi) does, the Advisory Committee's note clarifies that the exception to the general protection against expert discovery extends to information relating to fees only in the action at issue.  It states, "[Rule 26(b)(4)(C)(i)] is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided *in relation to the action*."  Fed. R. Civ. P. 26 advisory committee's note (2010) (emphasis added).  Rule 26, therefore, does not routinely require production of information related to an expert's compensation beyond the case at bar.

Allergan argues the information it seeks is relevant as evidence of possible bias or prejudice.  It cites two cases in which courts permitted counsel to ask experts at upcoming depositions about the percentage of income that they derived on an annual basis from providing expert witness services.  *Sullivan v. Metro N. R.R. Co.*, No. 3:05CV665 AHN, 2007 WL 8327696, at *2 (D. Conn. Dec. 3, 2007); *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001).  However, these same courts noted that document requests may become "overkill" and expressed concern about the impact of broad discovery regarding experts' financial information.  *Id.*  For example, the *Sullivan* court explained that broad requests "may cause qualified experts in future litigation to withhold their expertise for fear that

2

opposing counsel will root around in their financial records, searching for evidence of bias." 2007 WL 8327696, at *2. The *Behler* court reasoned that most people are sensitive about their income, and while there may be cases in which an expert's gross income and the specific amounts earned by providing services as an expert witness may be discoverable, "this should not be ordered routinely, without a showing, absent here, why less intrusive financial information would not suffice." 199 F.R.D. at 561. Permitting routine disclosure of the expert's gross compensation from all sources would provide little information relevant to a fair assessment of the expert's credibility but would raise a meaningful risk of confusing or distracting the jury. *Id.*

Even if the Court were to agree that the information Allergan seeks is relevant to bias impeachment "the mere fact that such information falls within the scope of legitimate discovery does not mean that parties are entitled to unfettered discovery of impeaching information, by whatever means of discovery they seek." *Sullivan*, 2007 WL 8327696, at *1. Rule 26(b)(2) permits the Court to limit the extent of discovery if it determines that it "is unreasonably cumulative or duplicative, or can be obtained from some other sources that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The Court shares a concern that rooting

3

around in experts' personal financial information could deter individuals with valuable knowledge and expertise from assisting future juries.  Moreover, an expert's potential bias may be demonstrated through less intrusive means than producing documentation of his or her entire financial universe.

    *Sullivan* and *Behler* involved narrower requests for information at a much earlier stage of discovery than the present case and both courts did not grant the full scope of the requests for documents.  Dr. Kessler has already provided information regarding his compensation from other cases involving Botox litigation and, in his deposition, he offered an estimate of the percentage of his time spent on litigation matters as opposed to other professional pursuits.  It would unduly burden Dr. Kessler to require him to produce documents sufficient to demonstrate his total income and the percentage of his income derived from expert witness fees on the eve of trial when Allergan already has significant evidence through which it may raise the issue of bias with the jury.  However, if the Court were to require Dr. Kessler to disclose this highly personal information, Allergan's expert witnesses should also be required to make such disclosures.  This information is not sufficiently probative to require such disclosures.  Accordingly, Allergan's motion is denied.

Dated at Burlington, in the District of Vermont, this 29th day of October, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge